# Cheney, Trustee, &c., *v.* Nathan.

*Bill in Equity for the Foreclosure of a Mortgage.*

1. *Mortgage; effect of transfer to assignee in a deed of assignment for the benefit of creditors; when payment not shown.*—N. executed to W. a note and mortgage to secure borrowed money, which she at once paid over and loaned to M. Subsequently M. executed a deed of assignment for the benefit of all of his creditors. N. then executed to the trustees named in the deed of assignment a conveyance of the property which had been mortgaged to W. This conveyance, however, was subsequently declared void. A short time after the execution of this conveyance to them by N., and before it was declared void, the trustees, believing that they were the owners of the absolute estate by virtue of such conveyance, paid the amount of the mortgage debt to W., and obtained an assignment to them from W., of the note and mortgage which had been executed by N., it being stated in such assignment, indorsed on the note, that it was not the intention of the trustees to satisfy said note, or in any way, by said transfer, to affect as security for the payment of said note the mortgage executed to secure it. *Held:* That the assignees in the deed of assignment, by

accepting the trust, did not become debtors to any of the creditors of M., but held all of the property assigned to them for the equal benefit of all the creditors of M., and that, therefore, by the special assignment of the note and mortgage, the incumbrance upon the land was not removed, but they held the note and mortgage for the equal benefit of the creditors of M.; and hence, they can compel the payment of the mortgage by N. or enforce its foreclosure, and that N. is entitled, after the payment of the mortgage, to receive from the assignees in the way the other creditors of M. do, a proportionate interest in the assets of the trust estate.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The facts of the case are sufficiently stated in the opinion.

TOMPKINS & TROY, and HORACE STRINGFELLOW, for appellant.—1. The taking of the transfer of the mortgage executed by Mrs. Nathan and her husband to Mrs. Wolff by the original assignees, did not constitute, under the circumstances of this case, the payment of that debt by them, and such a payment did not operate, to extinguish the debt in the hands of the assignees.—*Ellison v. Moses*, 95 Ala. 221; *Goldthwaite v. Ellison*, 99 Ala. 497; Code of 1886, § 1737; 3 Amer. & Eng. Encyc. of Law, (2d ed.), 116; *Pryor v. Davis*, 109 Ala. 117.

2. A court of equity would keep the lien of Mrs. Wolff's mortgage alive, for the protection of the assignees, although there had been no expressed *intention* on the part of the assignees when they paid the money to Mrs. Wolff to preserve it as a lien upon the property.—1 Jones on Mort., §§ 848, 869; *Gresham v. Ware*, 79 Ala. 196. But it appears from the bill that the assignees did not rely upon this equity which keeps a mortgage paid by the holder of an equity of redemption, or stranger to the mortgage, whenever it is necessary for his protection, without the expression of his intention. It appears from the bill that at the time they made the payment they expressed their intention not to pay the debt, nor in any manner to affect the mortgage as a security for the same, but merely to take an assignment thereof, an assignment taken for the protection of the trust confided to them. In such case there can be no doubt that the mortgage is kept alive as an addition to the title for the protection of the person paying it. The intimation thus

[Cheney, Trustee, &c., v. Nathan.]

expressed to keep it alive is important only when there is a legal duty, a contractual obligation upon the party agreeing to pay. In this case there was, as we have shown, no contractual obligation, no duty upon the assignees to pay.—1 Jones on Mortgages, §§ 856, 864; *Cullum v. Emanuel*, 1 Ala. 23.

3.   The decree rendered by the chancery court on the bill filed by this appellant was not a bar against setting up the mortgage now sought to be affirmed.—*Cannon v. Brame*, 45 Ala. 262; *Gilbreath v. Jones*, 66 Ala. 129; *McCall v. Jones*, 72 Ala. 368; *Pruitt v. Holly*, 73 Ala. 369; *Cheney v. Nathan*, 110 Ala. 254.

A. A. WILEY and W. S. THORINGTON, *contra*.—The assignees under the deed of trust sustained precisely the same relation to the property involved in this controversy they would have sustained if it had been part of the estate vested in them by the deed of assignment itself.

The assignees, therefore, simply paid Moses Bros.' debt when they undertook to purchase the mortgage, and the recital in the written transfer of the mortgage that it was not intended to cancel or satisfy the debt, could not possibly change the legal effect of that payment.   It operated as an extinguishment of the debt just as effectually as if Moses Bros. had made the payment.   The assignees made the payment with Moses Bros.' assets and as their representatives, and the legal effect is the same as if it had been made by Moses Bros. themselves.—*Sampson v. Jackson*, 103 Ala. 550; *Sampson v. Fox*, 109 Ala. 662; *Koonce v. Bass*, 112 Ala. 685.

HEAD, J.—The bill avers that on August 9th, 1888, said Emily T. Nathan and her husband, Lewis W. Nathan, executed to Lena Wolff a mortgage on the land described in the bill to secure the payment of a note for $4,000 then executed by said Emily to said Lena Wolff, with the necessary written consent of her husband. The note was payable two years after date, with interest payable semi-annually.   The mortgage recited that the note was given for money borrowed by said Emily from the payee.   That in July, 1891, said Emily executed a conveyance of said property to H. A. Sayre, S. M. Levin, and R. B. Snodgrass, assignees under a certain deed of trust executed by Moses Bros. for the benefit of

their creditors; the said property to be held by said assignees under the trusts set forth in said deed of assignment, and the assignees were let into the possession of the property. On August 17th, 1891, said assignees as such, obtained an assignment of said note from said Lena Wolff, paying her therefor said sum of $4,000, and the accrued interest thereon. It was stated in the assignment of the note, endorsed thereon, that said assignees declared it to be their intention not to satisfy said note, or, in any way, by said transfer, to affect as security for payment of the same, the said mortgage executed to secure the note, as aforesaid.

Afterwards said assignees were removed from said trust, and the complainant and one Janney became their successors, and thereupon said original assigness assigned said note to such successors by endorsement thereon. Janney afterwards died, and complainant, Cheney, has since been administering the trust, as surviving trustee. In 1895 (the date not given), said deed of conveyance executed by said Emily to said assignees was by decree of the chancery court declared void by reason of the failure of said Lewis W. Nathan to properly join in the execution of the same, and the complainant, under said decree, surrendered possession of said property to said Emily.

While in the possession of said property, said original assignees and their successors, in administering their trust, paid large sums of money for State, county and city taxes and charges upon said property, and other sums for insurance and repairs, receiving a small amount of rent which was greatly insufficient to reimburse them for said sums so paid. The said mortgage provided, among other things, that in case it was foreclosed by judicial proceedings a reasonable attorney's fee for the same would be paid out of the proceeds of the sale. Indebtedness secured by said mortgage has never been paid.

The original bill, which was filed by said Cheney, as surviving trustee of said Moses Bros. as aforesaid, against the said Emily T. Nathan, alleging the foregoing facts, prayed for an order of reference to ascertain the amount due complainant on account of said indebtedness and the said sums paid for taxes, repairs and insurance and a reasonable solicitor's fee for the foreclosure; that the mortgage be foreclosed and the said prop-

erty decreed to be sold for the payment of the sums found due, together with the costs and expenses of this suit, and for general relief.

The respondent answered the bill admitting the execution of the note and mortgage, but setting up that no part of the money was borrowed for her use or benefit, that she received no part thereof but that the same, and the whole of it, was borrowed for, paid to, and used by, the said Moses Bros. of whose estate the complainant is trustee. She admitted the signing of the said deed of conveyance to said original trustees, as alleged in the bill, and that said assignees went into possession of the property, and she admits and avers, that said conveyance so executed by her, and purporting to be executed by her husband, was thereafter, on May 30th, 1895, in a certain cause in which the complainant was a party, declared null and void by the chancery court, and the property restored to her possession. She admits the payment of said mortgage debt and interest, and the transfer by said Lena Wolff to said assignees, as alleged in the bill, but she insists that said assignees, in making said payment and taking said transfer, simply paid the debt of said Moses Bros., and not her debt, and that the transfer did not and could not have the effect of keeping the note and mortgage alive as a debt against her, or as a lien upon her said property, but that the effect of said payment was to cancel and discharge the mortgage debt. She neither admits nor denies the allegations in reference to expenses paid, attorney's fees, etc.

The answer sets up, circumstantially, the facts touching the borrowing of the money from Mrs. Wolff, and the execution of said note and mortgage by the respondent on her property, to secure the loan, and shows that respondent had nothing to do with the negotiation for the loan, had no personal interest in it, but that the whole transaction was one of Moses Bros. to obtain the loan for their own use and benefit; that it was obtained by them, the money received by them and used by them, and that respondent executed her said note and mortgage for the said loan, entirely as a surety for said Moses Bros., and that the debt was wholly the debt of Moses Bros. The respondent avers, on information and belief, that the said Moses Bros., with their own money, paid interest on said mortgage debt up to the time of

their assignment, and that she has never, at any time, paid any interest thereon, or, in any other manner, recognized said debt as her own, as between her and the said Moses Bros., or their said assignees, and she avers that said note and mortgage are without consideration as between her and said Moses Bros. and their assignees.

These facts the respondent sets up by way of plea, as well as answer.

The answer then proceeds to set up the said judicial proceedings wherein the said conveyance by the respondent to the said original assignees was set aside and respondent restored to the possession of the property, pleading, by virtue thereof, *res judicata* ; but, as the case comes before us, it is unnecessary to notice this defense.

The answer is prayed to be taken as a cross-bill, to be heard at the same time with the original bill. It prays that the complainant be required to deliver up the said note and mortgage to be cancelled, and that he be perpetually enjoined from asserting any further claim to said property. A reference is prayed, to ascertain what amounts, if any, the complainant, or his predecessors, have paid out for taxes, insurance and repairs, and what rents, if any, they have received, and respondent offers to pay to complainant the excess, if any, of taxes, insurance and repairs over the amount of rents received. She prays also for general relief.

On October 5, 1896, after the coming in of said answer, the complainant amended his bill, alleging that said assignment of Moses Bros. conveyed and transferred to said assignee all of the property of every character and description owned by said Moses Bros., either as partners or as individuals, for the benefit of their creditors, respectively, to be held by said assignees under the trusts therein declared, and to be sold and distributed among the several creditors of the firm and the individuals, respectively, according to their respective liens and priorities, as created and declared by law, and said assignees entered into possession of all of said property so assigned ; that said conveyance of respondent to said original assignees had upon the same a certificate of acknowledgement wherein it was certified by a notary public of the county of Montgomery, State of Alabama, where the deed was signed, that respondent and her

said husband had both appeared before the said notary, and that they were both known to him, and that both acknowledged before him that, being informed of the contents of the conveyance, they executed the same on the day the same bore date ; that the total amount paid out of the assets of the said partnership of the said Moses Bros. turned over to said assignees up to that date amounted to only 22 1-2 per cent of the debts due to such creditors, respectively, and interest thereon to April 7, 1892, and that the property of the said partnership, in the hands of the complainant, would be wholly insufficient to pay the balance of said debts ; that the said deed of conveyance of said Emily to said assignees was declared void by said decree in chancery, and complainant required to deliver it up for cancellation, by reason of the fact that it appeared in the suit, in which said decree was rendered, that, although said deed upon its face appeared to have been acknowledged by both the said Emily T. Nathan and Lewis W. Nathan, her husband, yet, in truth and in fact, the same was never acknowledged by the said Lewis, but the certificate of acknowledgment was written upon the same prior to the date when the said Lewis signed it ; but, complainant avers, that said signatures and acknowledgment were both upon said deed when the same was delivered to said assignees ; and it is averred, upon information and belief, that, at the time the said assignees took the transfer of said note from Mrs. Wolff, they had not been informed that there was any question about the validity of the said deed.

The respondent, in answer to the bill as amended, interposed her original answer and cross-bill, and set up nothing further not already in issue between the parties.

There were demurrers to the cross-bill raising the questions whether or not the facts stated showed that the mortgage debt was paid and discharged by the assignees, by reason of their payment to Mrs. Wolff of the amount thereof, with the accrued interest, and the execution of the transfer by Mrs. Wolff to them ; and whether or not the said adjudication, in the other cause, was a bar to the relief sought by the complainant. The same defenses were made by pleas, the first setting up the alleged payment and the second the alleged adjudi-

cation. The chancellor sustained the theory of payment and overruled the other defense.

In the discussion of the case by the counsel for appellee, the assignees of Moses Bros., in paying the money to Mrs. Wolff and taking the transfer from her, are placed exactly in the shoes of Moses Bros., if that firm had, itself, in recognition that the debt was theirs, paid the money to Mrs. Wolff and taken the transfer to themselves; and as, in that instance, the debt would have been unquestionably discharged, and the mortgage incumbrance removed from the land, it is argued that the payment by the assignees had the same effect. We are unable to assent to this view. The argument proceeds upon the idea that the assignees were debtors charged with the same duties and obligations, in regard to the payment of the debt, as rested upon Moses Bros.; and herein lies its fault. The assignees did not, by accepting the trust, become debtors to any creditor of Moses Bros. Their duties were of a trust character, and were defined by the terms of the instrument creating them. It was their duty to receive and administer all of the assets assigned to them for the equal benefit, respectively, of the several classes of creditors provided for, paying to each creditor his proportionate interest in the fund which, upon administration of the trust, would be found to be in their hands for distribution to creditors. Their liability, until a dividend should be declared, was alone in a court of equity, where they might be held to account for the manner of their administration of the trust. No action could have been maintained against them, in any court, as a debtor by reason of the obligations of a debtor which rested upon their assignors. They were not to pay debts but divide assets.

It is true that if these assignees had, with a knowledge of all the facts, undertaken to assume the obligations of Moses Bros., and paid the debt, with the view of discharging the same, it would have operated as a discharge to the same extent as if the payment had been made by Moses Bros. themselves; but such was not the case. In the first place, at the time the payment was made, they held a deed which appeared to be a complete, valid conveyance of the land in fee simple to them by Mrs. Nathan and her husband; they believed that they were the owners of the absolute estate by virtue of this

conveyance, and of course, that Mrs. Nathan had no interest or estate in the premises. Their purpose, and the intent of all parties connected with the transaction clearly were, not that the assignees were voluntarily paying a large creditor of Moses Bros. in full, when there were in their hands assets sufficient to pay only a small part of the debts provided for, but that they were getting in an incumbrance upon the land for the benefit, as they and all parties supposed, of all the creditors, making more valuable and salable the property in their hands. In the next place, the assignees did not remove the incumbrance by simple payment of the mortgage debt, but they expressly sought to protect themselves by taking a special assignment of the mortgage note to themselves, expressly stipulating that it should not have the effect of discharging the debt. There can be nothing plainer than by this transaction the assignees secured to themselves, individually, as well as the trust they represented, protection against what might otherwise have been presumed to have been a payment of the debt. If the payment made by them should be declared to have had the effect of discharging the mortgage, a loss of a large per cent. of the amount would have fallen upon the assignees, personally, unless upon a settlement of their trust, the court should see proper to visit the loss upon the trust estate. The special transfer by Mrs. Wolff, and the special stipulation therein, to which we have referred could have had no conceivable object or intent other than to protect both the trust estate, and the assignees, individually, from the possibility of just such a loss; and it would be doing the utmost violence not only to legal rights, as defined by the contract of the parties themselves, but by the principles of equity as well, to now hold that there was an implied intention to pay this debt in full, without regard to whether or not there were sufficient assets for that purpose. We think the most ample equity which may be demanded by Mrs. Nathan, under the circumstances of this case, is to receive from the assignees, in the way that other creditors do, her proportionate interest in the assets of the trust estate, after she shall have been put to pay, by the foreclosure of the mortgage upon her property, or otherwise, the said mortgage debt.

12

The defense of *res judicata* was overruled by the chancellor, and is not before us.

Reversed and remanded.